**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-00749-STV

JEFFREY ANTHONY WOODFORK,

Plaintiff,

v.

SHERIFF DAVID LUCERO,
CAPTAIN BACOR,
RHONDA GOODWIN, and
TEJINDER SINGH

Defendants.

---

**ORDER**

---

Entered by Magistrate Judge Scott T. Varholak

This matter comes before the Court on the County Defendants' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) (the "Motion"). [#31] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [#27, 29] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED**.

## I. BACKGROUND[1]

At all times relevant to this action, Plaintiff was detained at the Pueblo County Detention Facility ("PCDF"). [#9 at 5[2]] Plaintiff takes fioricet due to a history of chronic migraine headaches and seizures. [*Id.*] On May 20, 2025, Plaintiff was asked whether he took any medications and presumably responded by indicating that he took fioricet. [*Id.*]

On May 23, 2025, Plaintiff had a seizure. [*Id.*] As a result, he was moved to administrative segregation and moved to a lower bunk. [*Id.*] From that date through June 30, 2025, Plaintiff talked to several sergeants at PCDF and asked them to let medical know that medical had not seen Plaintiff within the ten days of being admitted to PCDF, as required by PCDF's policies and procedures. [*Id.*]

On July 10, 2025. Plaintiff saw Defendant Physician's Assistant Tejinder Singh. [*Id.*] Defendant Singh told Plaintiff that he could not find Plaintiff in the database. [*Id.*] Plaintiff told Defendant Singh that in 2019 and 2020 he had been at PCDF and was able to receive his medications. [*Id.*] Plaintiff also received his medications at facilities in Adams County and Arapahoe County, as well as while not detained. [*Id.*] Defendant Singh gave Plaintiff Excedrin and prescribed medications for which Plaintiff experienced

---

[1] The facts are drawn from the allegations in Plaintiff's Amended Complaint (the "Complaint") [#9], which the Court accepts as true at this stage of the proceedings. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)). The Court does not consider any additional factual allegations raised by Plaintiff in briefing. *See In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (disregarding additional factual claims asserted in briefing on a motion to dismiss, explaining that "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss").

[2] For consistency and clarity, the Court refers to the actual page number of the .pdf document uploaded to the Electronic Court Filing system, rather than to the numbering printed on each page.

adverse effects despite Plaintiff telling Defendant Singh that such medications caused such adverse effects. [*Id.*]

Plaintiff requested a grievance from Lieutenant Martino so that he could file a grievance in relation to this medical care. [*Id.*] Plaintiff also spoke with Defendant Captain Bacor about the incident. [*Id.*] Plaintiff also asked Captain Bacor if he could help Plaintiff get new prescription eyeglasses, as Captain Bacor had done in 2019 and 2020. [*Id.*]

On August 20, 2025, Plaintiff was seen by medical provider Kelly Grillion. [*Id.* at 6] Plaintiff again explained that he took fioricet and that he needed prescription glasses. [*Id.*] It appears Plaintiff was instead prescribed the medication for which he suffered from adverse effects. [*Id.*]

On February 12, 2026, Plaintiff again met with Ms. Grillion. [*Id.*] Plaintiff was having problems with his kidneys due to overuse of Excedrin. [*Id.*] Ms. Grillion stopped the Excedrin prescription and placed Plaintiff on fioricet. [*Id.*] Plaintiff also inquired again about the prescription glasses. [*Id.*]

On April 10, 2026, Plaintiff was told that he would need to pay $170 for an eye exam and $75 for a pair of glasses. [*Id.*] Plaintiff is indigent and cannot afford such amounts. [*Id.*]

Plaintiff initiated this action on February 23, 2026. [#1] The operative Complaint brings a single claim alleging deliberate indifference in violation of the Eighth Amendment. [#9] Of relevance to the instant Motion, the Complaint names as Defendants David Lucero, the Pueblo County Sheriff, and Captain Bacor of PCDF, both in their official capacities.[3] [#9 at 3-4] On August 18, 2026, Defendants Lucero and Bacor filed the

[3] Two other Defendants are named and have answered the Complaint. [#21]

instant Motion seeking to dismiss the claim against them. [#31] Plaintiff has responded to the Motion [#39] and Defendants Lucero and Bacor have replied [#44].

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Cassanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant." *Id.* at 1110 n.3. The Court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Moreover, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

## III. ANALYSIS

Defendants Lucero and Bacor argue that Plaintiff has not plausibly alleged a claim for deliberate indifference against them. [#31 at 4-5] The Eighth Amendment to the United States Constitution protects a prisoner's right to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Prison officials are required to "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and . . . tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). Prison officials violate this standard when they are deliberately indifferent to an inmate's serious medical needs. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

"'Deliberate indifference' involves both an objective and a subjective component. The objective component requires the deprivation of the medical need to be 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quotation omitted).

The subjective component of a deliberate indifference claim "is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sealock*, 218 F.3d at 1209 (quoting *Farmer*, 511 U.S. at 837). Mere negligence, however, is not sufficient. *Farmer*, 511 U.S. at 835. Rather, "[t]he subjective component is akin to 'recklessness in the criminal law,' where, to act recklessly, a 'person must "consciously disregard" a substantial risk of serious harm.'" *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837, 839). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 837) (alteration in original); *see also id.* at 753 (stating that the subjective component inquiry is: "were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?").

In the prison medical context, the Tenth Circuit recognizes two types of conduct that will constitute deliberate indifference to a medical need. First, "a medical professional may fail to treat a serious medical condition properly." *Sealock*, 218 F.3d at 1211. Second, a prison official may "prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Id.*

Here, Plaintiff has not alleged that Defendants Lucero or Bacor, or anyone else employed by Pueblo County, prevented Plaintiff from receiving treatment, denied Plaintiff access to medical personnel, or was otherwise deliberately indifferent to Plaintiff's

medical conditions. Indeed, if anything, it appears from the Complaint that the PCDF staff attempted to put Plaintiff in touch with medical personnel and Plaintiff did in fact see medical caregivers. [#9 at 5-6] And the PCDF staff was "entitled to rely upon the advice and course of treatment prescribed by [PCDF's] medical personnel," provided such reliance was reasonable. *Key v. McLaughlin*, No. 10-cv-00103-WJM-CBS, 2013 WL 1507950, at *5 (D. Colo. Mar. 19, 2013) (collecting cases), *report and recommendation adopted*, 2013 WL 1509478 (D. Colo. Apr. 12, 2013). Thus, Plaintiff has not plausibly alleged deliberate indifference by Defendants Lucero or Bacor, or anyone else employed by Pueblo County.

Moreover, Plaintiff's claims against Defendants Lucero and Bacor are brought against them in their official capacities. "Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent," and thus courts apply the same standards of liability to municipalities as to official capacity claims against municipal officials. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978); *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). And "municipalities and municipal entities . . . are not liable under 42 U.S.C. § 1983 solely because their employees inflict injury on a plaintiff." *Fofana v. Jefferson Cnty. Sheriff's Off.*, No. 11-cv-00132-BNB, 2011 WL 780965, at *2 (D. Colo. Feb. 28, 2011) (citing *Monell*, 436 U.S. at 694; *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). Instead, "[t]o hold a municipality liable under § 1983, a plaintiff must prove (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) the policy or custom was the moving force behind the

constitutional deprivation." *Crittenden v. City of Tahlequah*, 786 F. App'x 795, 800 (10th Cir. 2019) (citing *Monell*, 436 U.S. at 694). A municipal policy or custom may take the form of:

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations omitted). Here, the only policy or custom alleged is PCDF's policy of ensuring that detainees are seen by medical personnel within ten days of entering the facility. Thus, far from having a policy of deliberate indifference, PCDF's policy is to ensure that detainees receive medical attention. Thus, Plaintiff has not plausibly pled a municipal liability claim.

Accordingly, the Court GRANTS Defendants' Motion and DISMISSES the claim against Defendant Lucero and Bacor WITHOUT PREJUDICE. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (holding that when the plaintiff is proceeding pro se, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend" (quotation omitted)); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the County Defendants' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) [#31]. A status conference is set for November 19, 2026, at 10:00 a.m.

DATED: October 2, 2026

BY THE COURT:

s/Scott T. Varholak
United Stated Magistrate Judge